# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1955V

| | |
|---|---|
| RYAN CARROLL,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: May 29, 2025 |

*Braden Andrew Blumenstiel, The Law Office of DuPont & Blumenstiel, Dublin, OH, for Petitioner.*

*Alexa Roggenkamp, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND ORDER TO SHOW CAUSE[1]

On October 4, 2021, Ryan Carroll filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleges that he suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on October 4, 2018. Amended Petition at ¶¶ 1, 14.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On August 24, 2022, Petitioner filed an amended petition, providing additional detail and medical records citation. ECF No. 22.

For the reasons discussed below, I find there is preponderant evidence establishing that the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Based upon the record as it currently stands, however, Petitioner has failed to provide preponderant evidence to establish two other claim requirements: that he suffered limited range of motion ("ROM"), or six months of post-onset sequelae.

## I.     Relevant Procedural History

Along with the Petition, Mr. Carroll filed an affidavit and some of the medical records required by the Vaccine Act. Exs. 1-3, ECF No. 1; *see* Section 11(c). Over the subsequent ten-month period, he filed additional medical records. Ex. 5, filed Jan. 24, 2022, ECF No. 9; Ex. 8, filed July 21, 2022, ECF No. 15. On July 27, 2022, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 18.

Approximately one-year later, Respondent filed a status report identifying needed medical records and factual issues to be addressed. ECF No. 24. From mid-July through late September 2023, Petitioner provided the outstanding medical records, certified copies of medical records already filed, and additional documentation regarding insurance benefits and medication prescribed in 2016. Ex. 6-7, filed Aug. 22, 2023, ECF No. 25; Ex. 9, filed Aug. 24, 2023, ECF No. 26; Ex. 10, filed Sept. 29, 2023, ECF No. 30.

From late September 2023 through early March 2024, the parties attempted to reach an informal settlement in this case. *See,* e.g., Status Report, filed Jan. 5, 2024, ECF No. 36. On March 1, 2024, Petitioner informed me the parties had reached an impasse in their settlement discussions. Status Report, ECF No. 38.

On April 22, 2024, Respondent filed his Rule 4(c) Report opposing compensation. ECF No. 39. Emphasizing Petitioner's April 9, 2019 statement - that he could work out without pain and stopped taking pain medication one week prior (April 2nd), as well as the lack of treatment thereafter - Respondent argues that Petitioner cannot met the "severity requirement" applicable to all forms of Program claims. *Id.* at 5-6. He maintains that two instances of shoulder pain experienced by Petitioner in 2020 (more than fifteen months later) cannot be linked to his earlier symptoms and vaccination. *Id.* at 6.

Respondent also contends that Petitioner has failed to satisfy two of the requirements of a Table SIRVA - specifically pain onset within 48 hours, and ROM limitations. Rule 4(c) Report at 7. Regarding ROM, he insists that "objective testing, *and [P]etitioner's own statements* consistently showed that he had full range of motion in his

2

right shoulder." *Id.* (citing Ex. 3 at 26, 29; Ex. 7b at 196) (emphasis in the original). To support his arguments related to onset, Respondent references the length of time between vaccination and the date Petitioner first sought treatment – 85 days - arguing it undermines the veracity of the Petitioner-provided history of pain since vaccination. *Id.* at 7.

Thereafter, I instructed Petitioner to provide medical records citations to any entries that he believes show limitations in ROM post-vaccination. In response, Petitioner filed a status report providing a summary of his medical history and asserting that the record from an April 9, 2019 visit was sufficient to establish six-months sequela. ECF No. 41. Although he mentioned one recorded instance of hesitancy and pain with movement when providing his medical history, Petitioner did not specifically identify evidence showing limited ROM.

## II.     Issue

At issue is whether Petitioner experienced her first symptom or manifestation of onset (specifically pain) within 48 hours of vaccination,[4] and whether the record establishes any vaccine-related limitations in ROM,[5] as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. The Act's requirement of six-months sequela is also a disputed matter.[6]

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[4] 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

[5] *Bolick v. Sec'y of Health & Hum. Servs.,* No. 20-893V, 2023 WL 8187307, at *6 (Fed. Cl. Spec. Mstr. Oct. 19, 2023) (finding reduced ROM is required under 42 C.F.R. § 100.3(c)(10)).

[6] Section 11(c)(1)(D)(i) (requiring six-month sequela for claims not involving death or an inpatient hospitalization and surgical intervention).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.  Finding of Fact

I make this finding related to onset after a complete review of the record to include all medical records, affidavits, and additional evidence filed. Specifically, I base the finding on the following evidence:

- Petitioner has filed medical records from only one visit prior to the vaccination – an annual physical attended in May 2018. Ex. 6. Petitioner's sole complaint at that time was the frequent need to urinate during the night. *Id.* at 4. He was instructed to curtail his water intake during the evening, and told that a urology referral could be ordered if the issue continued. *Id.*

- On October 4, 2018, Petitioner (age 24) received the flu vaccine alleged as causal intramuscularly in his right deltoid. Ex. 1. In his affidavit, Petitioner explained that he received the flu vaccine at work. Ex. 2 at ¶¶ 5-6.

- Almost three months later, on December 28, 2018, Petitioner visited his primary care ("PCP"), complaining of "shoulder pain since 10/4/18 after receiving the flu vaccine to the right deltoid." Ex. 3 at 30. Reporting that his "pain [wa]s located in the upper portion of the shoulder, [h]e states that the injection felt higher than his previous flu vaccine." *Id.* Although he reported that his pain was worsening, Petitioner was not taking any pain medication. *Id.*

- An examination revealed pain upon palpitation (only at the injection site) but "full ROM bilaterally." Ex. 3 at 29. The PCP also observed "some hesitancy with the right side at initiation of movement . . .pain at 90 degrees with both forward and side lifting with the right side, . . . [and] pain decreased once above the 90 degree point." *Id.* Under "Physical Exam," it was again noted that Petitioner "exhibit[ed] tenderness and pain," but "[n]ormal range of motion." *Id.* at 31. Noting that he would refer Petitioner to an orthopedist or for physical therapy ("PT") if his pain persisted, the PCP diagnosed

    Petitioner with bursitis and prescribed 800 milligrams of ibuprofen three times a day for ten days. *Id.* at 29.

- Ten days later, on January 7, 2019, Petitioner called his PCP, reporting that his pain had improved and that "he does have full ROM." Ex. 7b[7] at 196. He recounted soreness in the morning after missing one ibuprofen dose the prior evening. The PCP advised him to continue taking 800 milligrams of ibuprofen for an additional seven to ten days, to continue his exercises, and to call back in ten to fourteen days. *Id.*

- On April 9, 2019 (now six-months and five days post-vaccination), Petitioner attended a second appointment with his PCP for follow-up of his shoulder pain. Ex. 3 at 25. He stated that "he has not taken the ibuprofen since last week . . . [and] has been able to workouts [sic] without pain." *Id.* Upon examination, Petitioner exhibited "no deficiencies with normal ROM . . . [and] no pain with palpitation." *Id.* at 26. The PCP advised Petitioner "to continue to do his shoulder exercises and to slow[ly] incorporate heavier weights as he so choses." *Id.*

- Less than one month later, on May 1, 2019, Petitioner visited his PCP for an annual physical. Ex. 3 at 1. Stating that "he is feeling good," Petitioner "report[ed] that he is active with fitness 3-4 times a week to include weight and cardio training." *Id.* at 2. Acknowledging that his "diet could improve," Petitioner expressed concerns only regarding his diet and sleep. *Id.*

- Upon examination, the PCP observed only some left ear wax buildup. Ex. 3 at 3. "Normal range of motion" was listed under musculoskeletal. *Id.* The PCP order labs and prescribed melatonin. *Id.* There is no mention of pain, including right shoulder pain, in this record. *Id.* 1-23.

- On May 9, 2019, Petitioner was informed, through the patient portal, that his labs looked good. Ex. 7b at 149.

- More than fourteen months after his annual physical, Petitioner messaged his PCP regarding a July 19, 2020 visit to the emergency room ("ER") for a fever, chills, fatigue, and body aches that began five days earlier and a sore neck that began that same day. Ex. 7b at 147. Having taken a COVID test a few days earlier, the results of which were not yet known, and after being told he may have meningitis, Petitioner went to the ER as instructed. *Id.* at

---

[7] Petitioner has filed his updated PCP medical records in two exhibits, labeled Exhibits 7a and 7b. ECF No. 25. However, he correctly used consecutive pagination for this entire Exhibit 7.

147-48. He was discharged after a rapid COVID performed at the ER was negative, and his symptoms were determined to be mild – the fever measuring 99 degrees. *Id.* at 148. Acknowledging that his symptoms "continue to be pretty mild" such as his neck soreness which had not reduced his range of motion (presumedly of his neck), Petitioner reported that he also had developed a rash. *Id.*

- On August 5, 2020, Petitioner informed his PCP, through the patient portal, that he "was recently diagnosed with Bell's Palsy during an ER visit on August 1st." Ex. 7b at 145. In a follow-up message on August 11, 2020, he stated he "was doing pretty well until [he] finished a couple of [his] prescriptions from the ER visit . . . [and] started getting joint pain on [his] right knee, shoulder, and some fingers" beginning yesterday. *Id.*

- Three months later, on November 4, 2020, Petitioner called his PCP, "stat[ing] that he [wa]s having right shoulder pain and he is assuming it is Bursitis due to him having it before." Ex. 7a at 94. When instructed to take over the counter medication (Aleve), Petitioner responded that "he tried OTC ibuprofen, and it only helped a little." *Id.* at 95.

- On November 11, 2020, the PCP followed-up by phone. Ex. 7a at 95. There is no evidence showing that Petitioner returned the call.

- Three months later, on February 26, 2021, Petitioner was seen by his PCP for reddening of the tips of his toes that were initially sore and swollen for the past three weeks. Ex. 7a at 69. It was determined that his symptoms, termed "COVID toes," may be related to COVID symptoms he experienced a few months prior. *Id.* at 69, 72. Petitioner was sent for COVID testing, advised to isolate, and told to return for treatment if his symptoms continued. *Id.* at 72-73. It appears this condition resolved without further treatment, and there is nothing in this record related to shoulder pain. *Id.* at 68-91.

- On March 22, 2021, Petitioner inquired as to the safety and type of COVID vaccine he should receive. Ex. 7a at 67.

- On August 24, 2021, Petitioner was seen by his PCP for an annual physical. Ex. 7a at 37. Seeking biometrical screening for his employer, Petitioner reported that he "[f]eels well feeling well overall. . . [with] [n]o other concerns at this time." *Id.* The PCP ordered labs and instructed Petitioner to return in one year. *Id.* at 41.

- In his affidavit, executed on October 1, 2021, Petitioner stated that "[i]mmediately after receiving the Flu vaccine, [he] began to experience shoulder pain that [he] associated with normal soreness following a shot, . . . [but] got worse over time." Ex. 2 at ¶ 9. He also maintained that his "vaccine-related symptoms lasted greater than 6 months." *Id.* at ¶ 16.

- In April 2022, Petitioner was seen for right knee pain Ex. 7a at 9-10, 14, 35. Again, there is no mention of right shoulder pain in this record. *Id* at 10-34.

The record as a whole supports Petitioner's contention that he experienced pain immediately upon vaccination. *See* Amended Petition at ¶¶ 9, 38; Ex. 2 at ¶ 9 (Petitioner's affidavit). Petitioner thereafter consistently reported right shoulder pain that began on October 4, 2018, the date of vaccination. Ex. 3 at 29-30. Without fail, Petitioner attributed his injury to the flu vaccine he received in October 2018. *Id.*

While these record entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury, and thus, for the purposes of obtaining medical care. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by a patient (such that it could still be somewhat subjective).

Respondent discounts the veracity of this evidence due to its timing - almost three months post-vaccination. But it is common for SIRVA claimants to delay treatment, thinking his/her injury will resolve on its own. And I have consistently determined that a delay of several months does not prevent a petitioner from satisfying this requirement, especially when there is no evidence of intervening medical care for any other illness or medical treatment. *See,* e.g., *Timberlake v. Sec'y of Health & Hum. Servs.,* No. 21-1905V, 2024 WL 2698873, at *6 (Fed. Cl. Spec. Mstr. Apr. 23, 2024).

Here, the almost three-month delay in treatment occurred from early October to late December 2018, a particularly busy time for most people. And Petitioner was not seen during this 85-day period for any other illness or medical condition. Such intervening treatment evidence can in many cases either corroborate a petitioner's claim or undermine it – but it is totally absent here. Furthermore, Petitioner's initial statement was

8

made in December 2018, almost three years prior to the filing of this claim, and thus, unlikely to have been influenced by litigation.

Accordingly, I find there is preponderant evidence supporting the conclusion that the onset of Petitioner's pain occurred within 48 hours of vaccination.

### V.     Order to Show Cause

Although onset is demonstrated, Petitioner has failed to provide the evidence needed to establish limited ROM or six-month sequela. During the treatment he received, Petitioner was consistently observed to have full ROM. Ex. 3 at 29, 25-26, 3 (in chronologic order). In a phone call on January 7, 2019, he acknowledged this fact himself. Ex. 7b at 196.

The only entries showing any difficulties with ROM are mentions of *hesitancy* before movement, and pain at 90 degrees which decreased as the movement continued. Ex. 3 at 29. But I have previously determined that pain *with* motion will not satisfy this Table SIRVA requirement. *Petty v. Sec'y of Health & Hum. Servs.,* No. 19-1332V, 2024 WL 5381961, at *5 (Fed. Cl. Spec. Mstr. Sept. 24, 2024). Rather, a demonstrated *outright* reduction of ROM is necessary. *Id.* Thus, these entries are not sufficient, and Petitioner's Table claim will be dismissed unless Petitioner can provide the required preponderant evidence.

Regarding the duration of his symptoms, Petitioner clearly stated on April 9th that he had not required pain medication for a week and was able to work out without pain. Ex. 3 at 26. These statements provide strong evidence of a complete pain cessation as of April 2, 2019. Although a mere five days prior to the six-month mark, Petitioner has not provided the evidence needed to support a continuation of pain (or any other vaccine-related symptom) beyond that date.

Petitioner argues that his PCP's advice "to continue his shoulder exercises and to slowly incorporate heavier weights as he so chooses . . . meets the 6 month severity requirement."[8] Status Report at 2, ECF No. 41. But this instruction can be interpreted as prophylactic medical advice, as opposed to evidence that Petitioner's symptoms did persist. And it is negated by compelling evidence in the same record showing a lack of pain – or any shoulder-specific treatment at all in the months threfter. To avoid the total

---

[8] Although Petitioner also mentioned the two instances of shoulder pain he experienced in 2020, he did not assert that they provide evidence of continued vaccine-related symptoms. Status Report at 2, ECF No. 41. And it is clear from the evidence currently in the record that the first complaint of pain in multiple joints, including right shoulder, right knee, and left hand (Ex. 7b at 143), was likely related to his Bell's Palsy, and the second was a *reoccurrence*, rather than continuation, of bursitis (Ex. 7a at 94).

dismissal of the claim due to an inability to establish severity, Petitioner must provide additional evidence of six-month sequela.

## Conclusion

Petitioner's claim cannot proceed unless he offers sufficient evidence (to date not filed) establishing six-months sequela, and he will not succeed pursuant to a Table SIRVA claim unless he can show limited ROM. I am giving Petitioner a final chance to obtain and file such evidence – and it is important he take that chance seriously. Failure to provide this evidence will result in dismissal of Petitioner's Table claim, or at least his Table claim, respectively. *Tsekouras v. Sec'y of Health & Human Servs*., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Human Servs*., 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

However, I also encourage the parties to renew their settlement discussions to determine if an informal agreement can be reached. Even if the ROM requirement cannot be met, it is likely severity *could* be established – in which case the claim might be a viable, causation-in-fact claim. Regardless, any compensation for pain and suffering will be on the low end of the range usually awarded in SIRVA cases, due to the mildness of Petitioner's symptoms and lack of medical treatment.

**Petitioner shall file the additional preponderant evidence needed to address the deficiencies set forth in this fact ruling, or to otherwise show cause why his claim (Table and possibly non-Table as well) should not be dismissed for insufficient evidence by no later than <u>Wednesday, August 13, 2025</u>**.

**Additionally, the parties shall file a joint status report updating me on their renewed settlement discussions by no later than <u>Tuesday, July 01, 2025</u>**. In the status report, they should state whether they believe an informal resolution can be reached and additional time would be helpful.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master